UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FREDERICK SHERLOCK,

       Plaintiff,                                    Hon. Paul L. Maloney

v.                                                  Case No. 1:07-CV-550

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/


**REPORT AND RECOMMENDATION**

      This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

      Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 53 years of age at the time of the ALJ's decision. (Tr. 17). He earned a Master's Degree in indutrial arts and agriculture and worked previously as a quality control analyst and building trades and industrial arts teacher. (Tr. 101-04, 129, 374).

Plaintiff applied for benefits on March 13, 2003, alleging that he had been disabled since November 1, 2002, due to sleep apnea, depression, knee injuries, back pain, and carpal tunnel syndrome. (Tr. 68-70, 158). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 26-59). On November 8, 2004, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, James Lozer. (Tr. 632-75). In a written decision dated January 20, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 16-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 6-9). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2004. (Tr. 17); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On March 3, 1995, Plaintiff was admitted to Forest View Psychiatric Hospital "after he became increasingly agitated, experiencing panic attacks with dizzy spells, rapid heart beat, numbness in his hands and shortness of breath." (Tr. 234). Plaintiff reported that he was also experiencing "confusion" and "difficulties concentrating." (Tr. 234). Treatment notes indicate that Plaintiff had previously been treated with Prozac and Wellbutrin "with no significant improvement." (Tr. 234). Plaintiff was diagnosed with generalized anxiety disorder with panic attacks. (Tr. 218). During his hospitalization, Plaintiff was treated with therapy and different medication. (Tr. 218-19). Plaintiff was discharged from the hospital on March 15, 1995, with instructions to continue taking his medication and participate in outpatient therapy. (Tr. 218-19).

Treatment notes dated March 30, 1995, reveal that Plaintiff's "depression and anxiety" had "improved significantly" with his new medication and that he "is no longer feeling depressed or confused." (Tr. 245-46). Plaintiff's GAF score was rated as 55.[1] (Tr. 246). Plaintiff reported that he "finally made a decision not to go back to his job that he found as the primary source of his emotional problems." (Tr. 246). Plaintiff found this particular job "frustrating" because he made many errors and did not feel qualified for the position. (Tr. 640-41). Plaintiff later indicated that, "I'm a black and white thinker and that job, it was very difficult because you had to work in gray areas and I couldn't handle gray areas." (Tr. 645). Plaintiff also stated that, "I wanted to injure

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

my knee to get out of having to go to that job for the Department of Labor, but I didn't do it. I went into Forest View instead." (Tr. 477, 666-67).

X-rays of Plaintiff's left femur, taken on January 6, 1998, revealed "two metallic staples. . .within the distal femur consistent with previous surgical change." (Tr. 279). Treatment notes dated November 16, 1998, indicate that Plaintiff has a history of "significant arthritis of both knees with multiple surgical procedures." (Tr. 272).

On October 13, 1998, Plaintiff participated in an electromyographic examination, the results of which revealed "evidence for moderate carpal tunnel syndrome on the right and borderline carpal tunnel syndrome on the left." (Tr. 271). Plaintiff underwent right carpal tunnel release surgery on November 23, 1998. (Tr. 288-89).

On May 7, 2001, Plaintiff participated in an electromyographic examination, the results of which were "abnormal," with evidence "consistent with bilateral carpal tunnel syndrome, right greater than left." (Tr. 323). Plaintiff underwent carpal tunnel release surgery on May 23, 2001. (Tr. 325). Plaintiff underwent further carpal tunnel surgery on June 22, 2001. (Tr. 326).

On December 4, 2001, Plaintiff underwent arthroscopic surgery on his left knee which revealed "degenerative arthritis of the knee with anterior cruciate insufficiency." (Tr. 327, 329).

On May 8, 2002, Plaintiff completed a questionnaire regarding his activities. (Tr. 140-43). Plaintiff reported that he cooks, washes dishes, performs household repairs, washes laundry, shops, and performs "some" lawn care. (Tr. 140-41). Plaintiff also reported that he reads, watches television, and cares for his pets. (Tr. 142).

On June 20, 2002, Plaintiff participated in a consultive examination conducted by David Cashbaugh, M.A. (Tr. 352-57). Plaintiff reported that he was unable to work due to

5

"depression, physical problems, and trouble functioning." (Tr. 352). Plaintiff reported that on a typical day he drives his son to school, "makes necessary phone calls," and "tries to get some of the stuff done around the house." (Tr. 354). He then naps before picking his son up in the afternoon. (Tr. 354). He later cooks supper and cares for his son. (Tr. 354). Plaintiff also reported that he washes laundry, performs lawn work, takes care of his animals, and goes hunting and fishing. (Tr. 354). The results of a mental status examination were unremarkable. (Tr. 355-57). Cashbaugh observed that Plaintiff was able to get in and out of his chair without difficulty and that his posture and gait "appeared appropriate." (Tr. 356). Plaintiff was diagnosed with dysthymic disorder and his GAF score was rated as 55. (Tr. 357).

On August 7, 2002, Ronald Marshall, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 358-71). Determining that Plaintiff suffered from dysthymia, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 359-67). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 368). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 368).

On August 20, 2002, Plaintiff participated in a consultive examination conducted by Dr. Rodney Kilpatrick. (Tr. 373-81). Plaintiff reported that he was unable to work due to depression, anxiety and panic disorder, and arthritis. (Tr. 373). Plaintiff also reported, however, that "he is currently job seeking and trying to get a position as a[n] industrial arts instructor and agricultural instructor in a local school system." (Tr. 373).

An examination of Plaintiff's back revealed "slight tenderness in the lumbosacral region," but normal range of motion throughout. (Tr. 376). Plaintiff exhibited normal range of motion in the joints of his upper and lower extremities. (Tr. 376). The results of a neurological examination revealed "decreased sensation over both palms, which would go along with a possible neuropathy from the carpal tunnel syndrome," but were otherwise "normal." (Tr. 376). Plaintiff's cognitive skills appeared "normal" and his affect appeared "somewhat flat, though not excessively so." (Tr. 376). Plaintiff walked with a normal gait and straight leg raising was normal. (Tr. 377).

The results of a functional capacity examination revealed that Plaintiff can walk 1-2 miles, sit for 20 minutes, stand in one place for 15 minutes, and stand for 2-3 hours if permitted to "move around." (Tr. 377). Plaintiff was able to bend, stoop, and squat and his fine motor skills were "normal." (Tr. 377). Plaintiff exhibited 130 pounds of grip strength in right hand and 100 pounds of grip strength in his left hand. (Tr. 377).

Dr. Kilpatrick reported that Plaintiff's depression and anxiety "are fairly well controlled at this point in time and that gainful employment would only enhance and improve his self esteem and confidence level." (Tr. 377). The doctor concluded that:

> In summary, it appears to me that [Plaintiff] is capable from a cognitive standpoint and from a physical standpoint of utilizing his normal fine and gross motor skills. If in fact his arthritis is an inconvenience to him, daily analgesics, using anti-inflammatory agents, or Tylenol should give him relief. It appears that his depression, anxiety, and panic disorders are fairly well controlled and he is on good medications for that. As far as restrictions, it appears it would be proper to give him a sit and stand option, particularly if sitting bothers him in one position or on a firm surface. He may want to limit the frequency of squatting and kneeling, though he appears capable of doing so. He easily carries the examining box across the room with a weight of 50-60 pounds on it, can lift it overhead, and can also place it gingerly on the floor. He can also turn to the left and

> right, placing it on a lower shelf and on a chair. Despite his many previous surgical interventions, it appears that he has had fairly good outcomes from these and I think that he is somewhat overstating the degree of difficulty he is having from the arthritis, as if to impress the examiner. Short of the above limitations, I do not see reasons for particular physical limitations.
>
> He expresses a strong desire to enter the teaching field and is pursuing a job in industrial arts and agriculture teaching. Those jobs are somewhat more sparse than they were in the past. He is capable of doing handyman work, but does not like to do heavy work. It would also probably be adviseable to avoid a high stress job, but a variety of lower stress jobs should be within his realm.

(Tr. 375, 377).

On March 20, 2003, Plaintiff was examined by Dr. Stephen Fisher. (Tr. 460-61). Plaintiff reported that he was experiencing pain in his left hand. (Tr. 461). Plaintiff reported that "even though he is unemployed due to back problems, he does odd jobs such as remodeling." (Tr. 461). An examination of Plaintiff's hand produced a "paucity of clinical findings." (Tr. 460). An EMG examination revealed "mild residual left carpal tunnel syndrome, with no ulnar neuropathy at the elbow." (Tr. 461). The doctor recommended that Plaintiff's symptoms be treated with "appropriate work restrictions, splinting and/or anti-inflammatory medications." (Tr. 460).

On March 29, 2003, Plaintiff completed a questionnaire regarding his activities. (Tr. 178-84). Plaintiff reported that he cooks, washes laundry, cares for his animals, shops, performs household repairs, and cares for his son. (Tr. 178-79, 182). Plaintiff also reported that he goes fishing and bird watching. (Tr. 180, 183).

Plaintiff's wife completed a similar questionnaire two days later. (Tr. 185-90). She reported that Plaintiff gets their son ready for school in the morning and drives him to school, after which he meets a friend for breakfast. (Tr. 185). Plaintiff's wife reported that Plaintiff cares for his

animals and uses the computer "to check out the world." (Tr. 185). She reported that Plaintiff drives, cooks, performs yard work, talks on the telephone, shops, fixes things, and cares for their son in the evenings while she is working. (Tr. 187-88). She also reported that Plaintiff goes hunting. (Tr. 185).

On June 4, 2003, Plaintiff participated in a consultive examination conducted by Allison Bush, M.S. (Tr. 475-78). Plaintiff reported that he was disabled due to depression. (Tr. 475). With respect to his activities, Plaintiff reported that he takes care of his many animals, plays computer games, performs yard work, cooks, helps his son with his homework, watches movies, goes hunting, and goes with his son to "look for frogs, tadpoles, snakes, and turtles." (Tr. 476). Plaintiff also reported that he was "doing a minimal amount of substitute teaching and some remodeling when he's able to physically manage this behavior." (Tr. 475). The results of a mental status examination were unremarkable. (Tr. 476-78). Plaintiff was diagnosed with dysthymic disorder and his GAF score was rated as 55. (Tr. 478).

At the administrative hearing Plaintiff testified that his medications make him too drowsy to focus. (Tr. 660). In this respect, Plaintiff testified that he has to drive his son to and from school and that he is "glad" when he is able to make the drive "without killing somebody." (Tr. 660, 664). Plaintiff testified that he can walk only "a couple of blocks" and cannot stand for more than five minutes. (Tr. 661). Plaintiff also testified that sometimes he cannot even lift 3 or 4 pounds because his pain is so great. (Tr. 662).

**ANALYSIS OF THE ALJ'S DECISION**

A. **Applicable Standards**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) back disorder; (2) depression; (3) arthritis (status post two back surgeries and multiple surgeries to the knees); (4) degenerative joint disease; (5) bursitis in the shoulders; and (6) sleep apnea. (Tr. 18). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ concluded that while Plaintiff could not perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he can only occasionally climb, balance, stoop, kneel, crouch, and crawl; (3) he cannot perform jobs that require constant exposure to vibration; and (4) he must be able to alternate between sitting and standing every hour. (Tr. 21).

With respect to Plaintiff's non-exertional impairments, the ALJ determined that Plaintiff experienced moderate limitations in the following areas: (1) ability to maintain attention and concentration for extended periods; (2) perform activities within a schedule; (3) maintain regular attendance and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms; (5) perform at a constant pace without an unreasoanable number and length of rest periods; and (6) set realistic goals or make plans independently of others. (Tr. 21-22). Given these non-exertional limitations, the ALJ concluded that Plaintiff can only perform work consisting of simple, unskilled tasks. (Tr. 21). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert James Lozer.

The vocational expert testified that there existed approximately 6,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 669-70). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

a. The ALJ Properly Evaluated Plaintiff's Credibility

The ALJ discounted Plaintiff's subjective allegations as "not entirely credible." (Tr. 20). Plaintiff argues that the ALJ improperly subjected him to a "sit and squirm" test.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

13

> alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

While the "sit and squirm" test has been roundly rejected, such does not diminish the validity of the ALJ's personal observations made at the administrative hearing. *See*, *e.g.*, *Johnson*

*v. Comm'r of Soc. Sec.*, 2000 WL 332059 at *4 (6th Cir., Mar. 22, 2000) (the court indicated its disapproval of the "sit and squirm" test, but found no error where the ALJ "provided a detailed analysis of Plaintiff's pain, assessing medical records, pain treatments, and daily activities. . .[and his] personal observation was one of several factors, not the sole factor, in determining that Plaintiff's pain was not disabling"); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir. 1981) (because credibility "is crucial to resolution of the claim, the ALJ's opportunity to observe the demeanor of the claimant is invaluable, and should not be discarded lightly"); *Gaffney v. Bowen*, 825 F.2d 98, 101-02 (6th Cir. 1987) (the ALJ's partial reliance on personal observations is not inappropriate where ALJ "examined the entire record"); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (while noting its disapproval of the "sit and squirm" test, the court indicated that "we have repeatedly endorsed the role of observation in determining credibility and refuse to make an exception in this situation"). In sum, it is not improper for the ALJ to base his credibility determination *in part* on his observations of the claimant. However, the ALJ errs when his credibility determination rests solely or primarily on his personal observations of the claimant.

To support his decision discounting Plaintiff's subjective allegations, the ALJ concluded as follows:

> Although the claimant has alleged experiencing debilitating difficulty, the evidence does not support his allegations. At the hearing, the claimant appeared to move and walk adequately. While the claimant is on psychotropic medication, he gets no counseling. Activities of daily living are fairly active and the claimant has hobbies and interests. He considers himself a handyman and does home repairs. He cares for a large number and variety of pets and enjoys looking for wild animals. He takes his son to school, uses the computer, cares for the yard, goes out to breakfast with a friend, helps his son with his homework, fixes meals, drives, grooms and bathes, and watches movies. The claimant goes to church, goes shopping, uses the

> telephone, watches television, reads magazines, gets along well with others, goes out to eat, visits with relatives, does volunteer activities, does laundry, goes fishing, and is able to use public transportation.
>
> Interestingly, the claimant testified that the reason he became disabled in November 2002 was because he could not find employment at that time. He indicated that he was fired from his previous job, but had no physical symptoms which would have prevented him from performing the job.
>
> While the undersigned does not doubt that the claimant experiences some pain, his statements concerning his impairment and its impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the degree of medical treatment required, the claimant's demeanor at hearing, the reports of the treating and examining practitioners, the medical history, the findings made on examination, and the claimant's assertions regarding his ability to work.

(Tr. 20).

The ALJ's personal observations of Plaintiff were one small portion of a detailed discussion of his medical records, treatment history, daily activities, and other evidence. As the authority cited above makes clear, in such circumstances reliance on personal observation is not improper. The ALJ did not subject Plaintiff to an improper "sit and squirm" test, but instead examined the entire record, which as the ALJ properly concluded, does not support Plaintiff's subjective allegations of disabling limitations. In sum, the Court finds that there exists substantial evidence to support the ALJ's credibility determination.

b. The ALJ Properly Assessed the Medical Evidence

On October 9, 2003, Plaintiff participated in a consultive examination conducted by Dr. Stephen Montes. (Tr. 512-16). The doctor concluded that Plaintiff can only occasionally lift five

pounds and can never lift more than five pounds. (Tr. 508). The doctor reported that during an 8-hour day, Plaintiff can sit for two hours, and stand, walk, and sit/stand for three hours each. (Tr. 508). The doctor reported that Plaintiff has been limited to this extent since March 2001. (Tr. 508). Dr. Montes also reported that Plaintiff can never bend, twist, squat, kneel, crouch, crawl, stoop, climb, or reach above shoulder level. (Tr. 509).

On November 14, 2003, Plaintiff participated in a consultive examination conducted by Paul Delmar, Ph.D. (Tr. 517-26). Plaintiff reported that "mentally, he feels he is disabled." (Tr. 517). Plaintiff exhibited a "restrictive" affect and "dysphoric" mood, but the results of a mental status examination were otherwise unremarkable. (Tr. 521-22). Dr. Delmar concluded that Plaintiff's "ability to maintain attention and concentration for extended periods of time is work preclusive." (Tr. 525). The doctor also concluded that Plaintiff was unable to "complete a normal work day or work week without interruption from psychologically based symptoms." (Tr. 525). According to the doctor, these symptoms "will not allow him to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 525).

The ALJ accorded little weight to these particular opinions. Specifically, the ALJ discounted Dr. Montes' opinion, noting that:

> This opinion of the claimant's inability is not consistent with the record as a whole. The single examination documents complaints of knee pain, back pain, shoulder pain, and hand pain. Examination revealed only a mildly antalgic gait and pain to palpation. Much of the report contains recitation of the claimant's complaints and does not document significant objective findings to support these complaints. Moreover, the undersigned notes that Dr. Montes' opinion was based on a one-time. . .examination and is not reflective of a treating relationship.

(Tr. 22).

> The ALJ likewise accorded little weight to Dr. Delmar's opinion, concluding that:
>
> This opinion also appears to be based on a single examination requested by the attorney. It, too, contains lengthy recitation of the claimant's complaints with little objective evidence to support these complaints. Since this report is not consistent with the other evidence in the record, it cannot be given significant weight.

(Tr. 22).

Plaintiff asserts that the ALJ erred by failing to accord appropriate weight to the opinions expressed by Dr. Montes and Dr. Delmar. First, because Dr. Montes and Dr. Delmar examined Plaintiff on only one occasion their opinions are entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989); *Wesley v. Commissioner of Social Security*, 2000 WL 191664 at *6 (6th Cir., Feb. 11, 2000).

In reaching their conclusions, Dr. Montes and Dr. Delmar both placed a significant amount of weight on Plaintiff's subjective allegations, which as discussed above are not worthy of significant weight. Moreover, as the ALJ correctly concluded, the doctors' opinions are contradicted by substantial medical evidence, as well as Plaintiff's extensive activities. The Court finds, therefore, that the ALJ's evaluation of these opinions is supported by substantial evidence.

### c. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 6,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  July 30, 2008        /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge